Corwin, J.
By a written contract of the parties, of April 9, 1849, Scott bound himself to pay into the treasury of “ The Oxford California Mining and Trading Company,” the sum of one hundred and seventy-five dollars, to entitle Clark to membership therein. Clark bound himself “ to give said company the privilege of retaining and paying over to the said Scott, his heirs or assigns, a full half share of all that he is entitled to by being a member of said company.”
Scott paid the money, and Clark signed the constitution of the company on the 10th day of April, 1849, and went with the ^company to California, and remained and served with them until the final dissolution of the company, on the 10th day of April, 1850. ;
The eighth article of said constitution provides that “ this company shall continue to exist for one year from the time of leaving Middletown, unless two-thirds of the members determine otherwise. But in no case shall the company be dissolved, or a dividend struck, until their return to the United States.”
The fourteenth article provides, “ that any article of this constitution may be altered or amended, at any time by a vote, of the members, except the tenth (relating to compensation to sick and dying members), which shall in no case be altered or amended.” On the route to California, one of the members, Mosier, died; and .after their arrival there, another, Morrison, left the company. The remainder of them located on Gold Eun, in September, 1849, and •continued their operations there until the 10th of April, 1850 ; which was just one year from the time they left Middletown ; when, by a unanimous vote, the company was dissolved, and each member thereafter acted for himself. At the dissolution, Clark’s share ■of the assets was ascertained to be $1,780 ; .one-half of which, subject to a deduction of the amount due to the representatives of the *330 deceased member, under the tenth article, and of a reasonable-amount to defray expenses home, Clark proposed to leave with the treasurer of the company, for the use of Scott; but the treasurer refused to receive it, and the whole amount was paid over to Clark.
On the 22d of February, 1850, under the rules and usages of California miners, a new “ claim” was made by the company, on Deer Creek, as a place for future operations; to maintain which, two members of the company went, every ten days, and threw up earth, and “ made marks ” upon it, as evidence of the continuance-of their claim. This claim was not susceptible of being worked in the winter and early spring, on account of wet weather. And, in fact, no gold was digged, Or work done upon it, until after the 10th of * April, 1850; when Clark and two or three others went there and commenced digging. Clark sold his interest in this claim for $1,000. Soon afterward he bought another claim for $3,000, which he sold in a few days thereafter for $6,000, and returned home.
This bill is filed for a settlement of the account between the parties; and it is claimed by complainant that he is entitled to one-half of the net proceeds of Clark’s trip to California; and by defendant, that he is liable only for one-half of what he realized, as-a member of the company, during the continuance of its organization.
Although the eighth article of the constitution of this company provides that the company shall not be dissolved, or a dividend, struck, until their return to the United States; yet, it also plainly contemplates and provides for a disorganization of the company,, for all business purposes, and a cessation of all further enterprises and operations by the company, as such, whenever two-thirds of its-members should so determine; and the restraining clause of said article was evidently designed only to secure the dividends to be made after their return to the United States. And we can not give such a construction to the article as to say that, by its force, after the company was in fact disorganized and disbanded, by a unanimous vote of the members, and its assets divided, and each had gone-to work on his own account and his own responsibility, the company still existed, and that the individual acquisitions of each should belong to the company. It certainly was never so intended by the parties, and such a construction would be inconsistent with the other power contained in the same article, namely, the power *331 of two-thirds of the members, at any time, to determine its existence. But we are relieved of any difficulty in the construction of this article, by the fact proven in the ease, that prior to the dissolution, the members of the company, as they might rightfully do, under the fourteenth article, above quoted, amended the eighth article, by rescinding the clause requiring their return to the United States before dividend.
* The-rights of complainant are, therefore, necessarily limited to the one-half of the interests of Clark, as a member of the company, at the time of its dissolution. This of course excludes from the account the proceeds of the claim which Clark subsequently purchased and sold, and leaves us only to consider whether the interest sold by Clark in the Deer Creek claim was held by him in his own right, or as a member of the company.
The testimony of all the surviving members of the company has-been taken; and, although some of them speak of the “ claim ” having been made and located by the company; yet the other facts and circumstances testified to, make it clear that such “ claim ” was never designed for the benefit of the company, as such, and never was owned or worked by the company. Before the “ claim ” was-located, the dissolution of the company had been resolved upon— the claim was worthless until it could be worked; and it was impossible to work it until late in the spring, on account of wet weather—it being that description of claim known in California as- “ wet diggins.” The company was dissolved and its assets divided, without any reference to this “claim,” and .it was ultimately resorted to, by a part only of the members, after the dissolution. ¥e think this item can not be included in the account between these-parties.
The defendant claims to be allowed a commission of seven per centum for the custody and care of transportation of the gold dust, and has proven such charge to be customary; but he has not shown that he was subjected to any expense for insurance, or otherwise,' on account- of such transportation ; and we think that, upon a reasonable allowance for the expenses of a safe and convenient passage from home, this charge ought not to be allowed.
A decree may be taken by complainant for one-half of the sum of $1,780, received by defendant at the dissolution of the company, deducting therefrom the sum of $254, the amount due the estate of Mosier, for which a decree was entered below, and the sum of $500,. *332 to cover defendant’s ^expenses home, with interest upon the balance thus ascertained, from the time of the filing of the bill. Each party to pay his own costs.

Decree accordingly.